DEREK SMITH LAW GROUP, PLLC
CATHERINE W. LOWRY, ESQUIRE
Attorney ID No. 316291
1628 Pine Street
Philadelphia, PA 19103
(267) 857-0832
catherine@dereksmithlaw.com
*Attorneys for Plaintiff Jane Doe*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| JANE DOE,<br><br>     Plaintiff,<br><br>  v.<br><br>MCLANE/EASTERN, INC.; MCLANE COMPANY, INC.; MICHELLE YARBOROUGH; OMAR JOSEPH; and EVERETT MUNROE.<br><br>     Defendants. | Civil Action No.<br><br>PLAINTIFF DEMANDS A TRIAL BY JURY |

**<u>COMPLAINT</u>**

  Plaintiff, Jane Doe, by and through her attorneys, Derek Smith Law Group, PLLC, by way of this Complaint, state:

**<u>NATURE OF THE CASE</u>**

1. This action arises out of the unlawful discrimination, hostile work environment, and retaliation by Defendants against Plaintiff based on her sex and in retaliation for Plaintiff's opposition to the unlawful comments and conduct of the Defendants.

2. Plaintiff brings this action charging that Defendants violated Plaintiff's rights pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), the Pennsylvania Human Relations

Act, as amended, 42 U.S. §§ 951, et seq. ("PHRA"), Pennsylvania Common Law, and the New Jersey Law Against Discrimination, N.J.S.A. §§ 10:5-1 et seq. ("NJLAD").

3. Plaintiff seeks damages to redress the injuries she has suffered as a result of Defendants' actions.


## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. §1331, which gives district court jurisdiction over all civil actions arising under the Constitution, laws, and treaties of the United States.

5. This Court has jurisdiction in that this action involves a Federal Question.

6. This Court has supplemental jurisdiction under 28 U.S.C. §1367.

7. This Court also has subject matter jurisdiction pursuant to 28 U.S.C. § 1343, which gives district courts original jurisdiction over (a) any civil action authorized by law to be brought by any person to redress the deprivation, under color of any State Law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States; and (b) any civil action to recover damages or to secure equitable relief under any Act of Congress providing for the protection of the civil rights.

8. Pursuant to 28 U.S.C. §1391(b), venue is proper in this district based upon Defendants' residency and due to the fact that a substantial part of the events or omissions giving rise to the claim occurred within Philadelphia County, in the Commonwealth of Pennsylvania, within the Eastern District of Pennsylvania.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

9. On October 24, 2023, Plaintiff timely filed a Charge of Discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC") and dual filed with the Pennsylvania Human Relations Commission ("PHRC") alleging violations of Title VII, the PHRA, and Pennsylvania Common laws.

10. On August 21, 2024, Plaintiff was issued a "Determination and Notice of Rights" letter by the EEOC.

11. Plaintiff has complied with all administrative prerequisites to bring this lawsuit.

## PARTIES

12. Plaintiff Jane Doe (hereinafter referred to as "Plaintiff") is referred to herein as Plaintiff Jane Doe due to the extreme hardship such revelation of her identity would cause and the need to protect victims of sexual crimes.

13. Plaintiff is an individual female who is a resident of the State of New Jersey.

14. At all times material, Defendant McLane/Eastern, Inc. was and is a foreign business corporation duly existing by the virtue and laws of the State of Texas.

15. At all times material Defendant McLane/Eastern did business in the States of Pennsylvania and New Jersey.

16. At all times material, Defendant McLane Company, Inc. was and is a foreign business corporation duly existing by the virtue and laws of the State of Texas.

17. At all times material Defendant McLane Company, Inc. did business in the States of Pennsylvania and New Jersey.

18. Defendants McLane/Eastern, Inc. and McLane Company, Inc. (hereinafter collectively referred to as "Defendant McLane") operate under the same corporate umbrella and are the single and/or joint employer of Plaintiff.

19. At all relevant times, Defendant McLane was, and is currently, doing business in the Commonwealth of Pennsylvania and has continuously employed at least fifteen (15) individuals.

20. At all relevant times, Defendant McLane has continuously been an employer engaged in an industry affecting commerce within the meaning of Section 701(b), (g) and (h) of Title VII, 42 U.S.C. §§ 2000 (e), (g), and (h).

21. At all times material, Defendant Michelle Yarborough (hereinafter referred to as "Defendant Yarborough") was a Manager for Defendant McLane.

22. At all times material, Defendant Yarborough held a supervisory position over Plaintiff.

23. At all times material, Defendant Omar Joseph (hereinafter referred to as "Defendant Joseph") was the Transportation Manager for Defendant McLane.

24. At all times material, Defendant Joseph held a supervisory position over Plaintiff.

25. At all times material, Defendant Everett Munroe (hereinafter "Defendant Munroe") was a Truck Driver for Defendant McLane.

26. At all times material, Defendants were joint employers of Plaintiff.

## MATERIAL FACTS

27. Around July 2021, Plaintiff began working for Defendant McLane as a Truck Driver.

28. Plaintiff's primary job duties and responsibilities consisted of driving a Defendant McLane truck to transport food goods throughout Pennsylvania and New Jersey.

29. Around the middle of July 2023, Defendant McLane scheduled Plaintiff and Defendant Munroe to work together as Team Drivers.

30. During various routes throughout New Jersey and Pennsylvania, Plaintiff and Defendant Munroe would alternate driving the Defendant McLane truck.

31. During these routes, Plaintiff and Defendant Munroe were alone, sitting next to each other in the truck for hours at a time.

32. Between around the middle of July 2023 through around August 2023, Plaintiff and Defendant Munroe worked together for approximately two (2) shifts per week, between around eight (8) to ten (10) hours at a time.

33. Between around the middle of July 2023 through around August 2023, while Plaintiff and Defendant Munroe were working the above-mentioned shifts, Defendant Munroe often subjected Plaintiff to severe sexual harassment that was both unwanted and unwelcome.

34. Between around the middle of July 2023 through around August 2023, Defendant Munroe made various sexually charged comments to Plaintiff.

35. By way of example, Defendant Munroe stated the following to Plaintiff: **(1) "Maybe if you were sucking your husband's thing, your husband would have stayed with you," (2) "You would be a bad bitch if you only would get some ass," (3) "Suck my dick. You should practice sucking dick with me," and (4) "If you practice with me, you can go home and maybe your husband will come back home."**

36. These comments occurred in both Pennsylvania and New Jersey during the routes in which Plaintiff and Defendant Munroe worked together.

37. These comments caused Plaintiff to feel incredibly uncomfortable, humiliated, embarrassed, degraded, and emotionally distressed.

38. Plaintiff reported Defendant Munroe's sexual harassment to Defendant Joseph.

39. Defendant Joseph failed to take any corrective action and as such, Plaintiff was forced to continue to endure sexual harassment at the hands of Defendant Munroe.

40. Around August 2023, Plaintiff bent down to unload the boxes in the truck when Defendant Munroe snuck up behind Plaintiff, aggressively put his arm around Plaintiff 's waist and forcefully pressed his erect penis into Plaintiff 's buttocks while stating, "**let me stick my dick in you.**"

41.  Plaintiff immediately recoiled and pushed Defendant Munroe off her.

42. This sexual assault occurred in Pennsylvania.

43. This sexual assault caused Plaintiff to feel incredibly uncomfortable, humiliated, degraded, and emotionally distressed.

44. Around one (1) week later, Plaintiff reported the sexual harassment and assault that she was forced to endure at the hands of Defendant Munroe to Defendant Yarborough.

45. Plaintiff also reported the sexual harassment and assault to Defendant Joseph and as he was her direct supervisor.

46. Plaintiff requested that Defendant Munroe be taken off of her route as she felt incredibly uncomfortable working alone with him.

47. Defendant Joseph failed to take appropriate corrective action and forced Plaintiff to continue to work alone with Defendant Munroe.

48. The Night Dispatcher, Ray Last Name Unknown, who worked for Defendant McLane, noticed that Plaintiff was incredibly uncomfortable working alone with Defendant Munroe.

49. As such, Ray Last Name Unknown, added Andrew Last Name Unknown onto Plaintiff's route so she would not be forced to work alone with Defendant Munroe.

50. Plaintiff often saw Defendant Munroe in the Defendant McLane parking lot (hereinafter referred to as "yard"), located in Pennsylvania, as they both would park their truck there following their shifts.

51. Between around August 2023 through around the middle of October of 2023, around one (1) time per week, Defendant Munroe called Plaintiff a "**bitch**" or "**whore**" when he saw her in the yard.

52. On around four (4) separate occasions, between around August 2023 through around October of 2023, Plaintiff reported the unlawful, discriminatory, and retaliatory comments she was subjected to at the hands of Defendant Munroe to Defendant Yarborough.

53. Defendant McLane, by and through Defendant Yarborough, failed to take any corrective action and allowed Defendant Munroe to continue subjecting Plaintiff to these demeaning, unlawful sexually degrading comments.

54. Around October 7, 2023, Defendant Munroe called Plaintiff and threatened her.

55. Defendant Munroe, during the phone call, stated to Plaintiff, "**I am from the streets. I went to jail for ten (10) years. I shot my mother's boyfriend in the head.**"

56. Upon information and belief, Defendant Munroe called Plaintiff and made the aforementioned statement to threaten Plaintiff for submitting sexual harassment complaints against him and to put her in fear of physical harm should she continue to report his sexual harassment to Defendant McLane.

57. This caused Plaintiff to feel incredibly fearful and uncomfortable.

58. As a result of the threat that Defendant Munroe made against Plaintiff and the fact that Plaintiff was extremely afraid for her safety, she began carrying a knife for protection.

59. Plaintiff felt as though she needed to carry something for her protection as Defendant McLane previously failed to take any action to ensure her safety following her reports of sexual harassment and sexual assault that she was forced to endure at the hands of Defendant Munroe.

60. Around October 8, 2023, during Plaintiff 's shift and while she was in Atlantic City, New Jersey, she saw Defendant Munroe with his wife.

61. Defendant Munroe and his wife aggressively approached Plaintiff with closed fists in a fighting position.

62. Plaintiff was extremely fearful and took out her knife in self-defense.

63. Thereafter, Defendant Munroe and his wife fled the scene.

64. Plaintiff called the police and filed a police report against Defendant Munroe and his wife.

65. Around October 9, 2023, Plaintiff reported Defendant Munroe's continuous discriminatory and degrading comments of calling Plaintiff a "bitch" and a "whore" and the aggressive behavior of Defendant Munroe that she experienced the day prior to Defendant Joseph.

66. Shortly thereafter, around October 9, 2023, Plaintiff again reported the sexual harassment, sexual assault, and aggressive behavior she was forced to endure at the hands of Defendant Munroe to Defendant McLane's Human Resources department.

67. Defendant McLane then removed Defendant Munroe from Plaintiff's routes, however, upon information and belief, Defendant Munroe was not reprimanded, disciplined, and no corrective action was taken to ensure Plaintiff no longer had to endure Defendant Munroe's unlawful behavior.

68. Around October 12, 2023, Defendant Munroe aggressively approached Plaintiff in the Yard and stood within an inch of Plaintiff.

69. Defendant Munroe proceeded to scream in Plaintiff's face, "**I know where you live at; I will come to your house**."

70. Plaintiff was extremely fearful that Defendant Munroe was going to physically attack her based on his aggressive tone and body language.

71. As such, Plaintiff, in self-defense, took out her knife and stabbed Defendant Munroe in his side.

72. The following day, around October 13, 2023, Plaintiff was suspended.

73. Upon information and belief, Defendant Munroe was not similarly suspended or reprimanded.

74. Around October 20, 2023, Defendants further retaliated against Plaintiff and terminated her employment from Defendant McLane.

75. Plaintiff claims that Defendants discriminated against and terminated Plaintiff because of her sex and because she opposed the unlawful conduct of Defendants related to the above protected class.

76. The above are just some examples of some of the discrimination and retaliation to which Defendants subjected Plaintiff on a continuous and on-going basis throughout Plaintiff's employment.

77. As a result of Defendants' actions, Plaintiff felt extremely humiliated, degraded, victimized, embarrassed, and emotionally distressed.

78. As a result of the acts and conduct complained of herein, Plaintiff has or may suffer the loss of income, the loss of salary, bonuses, benefits, and other compensation which such employment entails.

79. Plaintiff also suffered emotional pain, humiliation, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

80. Plaintiff has further experienced severe emotional and physical distress.

81. Plaintiff claims aggravation, activations, and/or exacerbation of any preexisting condition(s).

82. As Defendants' conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law, Plaintiff demands punitive damages against all the Defendants.

83. Plaintiff claims a continuous practice of discrimination and claims continuing violations and makes all claims herein under the continuing violations doctrine.

84. Plaintiff claims actual discharge as a result of the unlawful discrimination and retaliation and seeks reinstatement.

85. The Defendants have exhibited a pattern and practice of not only discrimination but also retaliation.

86. Plaintiff claims alternatively that Plaintiff is an Independent Contractor, and Plaintiff makes all applicable claims for the above conduct and facts under the applicable law pertaining to Independent Contractors. Furthermore, in such case, Plaintiff claims that Defendants owed and breached their duty to Plaintiff to prevent harassment, discrimination and retaliation and is liable therefore for negligence.

87. As a result of the Defendants' violations of Title VII, Plaintiff has suffered damages, including, but not limited to: past and future lost wages, pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, humiliation, emotional distress, reputational harm, diminishment of career opportunities, and other harm, both tangible and intangible.

**COUNT I**
**DISCRIMINATION**
**TITLE VII**
**(against Defendant McLane)**

88. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

89. This claim is authorized and instituted pursuant to the provisions of Title VII of the Civil Rights Act of 1964, 42 U.S.C. Section(s) 2000e et seq., as amended, for relief based upon the unlawful employment practices of the above-named Defendants. Plaintiff complains of Defendants' violation of Title VII's prohibition against discrimination in employment based, in whole or in part, upon an employee's sex.

90. SEC. 2000e-2. [Section 703] states as follows:

   (a) Employer practices

   It shall be an unlawful employment practice for an employer –

   (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or

   (2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin.

91. Defendants engaged in unlawful employment practices prohibited by Title VII by intentionally discriminating against Plaintiff with respect to her compensation, terms, conditions, training and privileges of employment because of her sex.

92. Defendants subjected Plaintiff to adverse tangible employment actions—defined as significant changes in Plaintiff's employment status, discipline, denial of training, failure to promote, reassignment with significantly different job responsibilities, and decisions causing changes in significant changes in her employment benefits.

93. Plaintiff's protected characteristic (sex) played a determinative factor in Defendants' decisions.

94. Defendants cannot show any legitimate nondiscriminatory reasons for its employment practices and any reasons proffered by Defendants for their actions against Plaintiff are pretextual and can readily be disbelieved.

95. Alternatively, Plaintiff's protected status played a motivating part in the Defendants' decisions even if other factors may also have motivated its actions against Plaintiff.

96. Defendants acted with the intent to discriminate.

97. Defendants acted upon a continuing course of conduct.

98. As a result of the Defendants' violations of Title VII, Plaintiff has suffered damages, including, but not limited to: past and future lost wages, pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, humiliation, emotional distress, reputational harm, diminishment of career opportunities, and other harm, both tangible and intangible.

**COUNT II**
**HOSTILE WORK ENVIRONMENT**
**Title VII**
**(against Defendant McLane)**

99. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

100.     Title VII also prohibits hostile work environment harassment, defined as unwanted comments or conduct regarding the Plaintiff's protected characteristics that have the purpose or effect of unreasonably interfering with the terms and conditions of the Plaintiff's employment. Harris v. Forklift Systems, 510 U.S. 17, 21 (1993).

101.     An employer is strictly liable for supervisor harassment that "culminates in a tangible employment action, such as discharge, demotion, or undesirable reassignment." Burlington Industries, Inc. v. Ellerth, 524 U.S. 742 (1998).

102.     Respondeat superior liability for the acts of non-supervisory employees exists where "the defendant knew or should have known of the harassment and failed to take prompt remedial action." Andrews v. city of Philadelphia, 895 F.2d 1469, 1486 (3d Cir. 1990).

103.     Employer liability for co-worker harassment also exists where "the employer failed to provide a reasonable avenue for complaint." Huston v. Procter & Gamble Paper Prods. Corp., 568 F.3d 100, 105 (3d Cir. 2009).

104.     The Third Circuit has held that the retaliation provision of Title VII "can be offended by harassment that is severe or pervasive enough to create a hostile work environment." Jensen v. Potter, 435 F.3d 444, 446 (3d Cir. 2006).

105.     Here, Defendants' conduct occurred because of Plaintiff's legally protected characteristic (sex) and was severe or pervasive enough to make a reasonable person of the same legally protected class believe that the conditions of employment were altered, and that the working environment was intimidating, hostile, or abusive.

106.     The discriminatory conduct directly refers to Plaintiff's sex.

107.     Plaintiff's supervisors, Defendant Yarborough and Defendant Joseph had the authority to control Plaintiff's work environment, and they abused that authority to create a hostile work environment.

108.     Derogatory and sexually explicit harassing conduct and comments filled the environment of Plaintiff's work area.

109.     Defendants knew that the derogatory and sexually explicit harassing conduct and comments filled Plaintiff's work environment.

110.     The derogatory and sexually explicit harassing conduct and comments occurred on an almost if not daily basis.

111.     The derogatory and sexually explicit harassing comments and conduct caused Plaintiff to sustain severe emotional distress resulting in physical illness.

112.     Plaintiff subjectively regarded the derogatory and sexually explicit harassing comments and conduct as unwelcome, unwanted, and she objectively opposed the conduct.

113.     The conduct was both severe and pervasive.

114.     The conduct was emotionally damaging and humiliating.

115.     The conduct unreasonably interfered with Plaintiff's work performance.

116.     The conduct was so extreme that it resulted in material changes to the terms and conditions of Plaintiff's employment.

117.     The Defendants provided a futile avenue for a complaint.

118.     The Defendants retaliated against Plaintiff for her complaints.

119.     The Defendants acted upon a continuing course of conduct.

120.     As a result of the Defendants' violations of Title VII, Plaintiff has suffered

damages including but not limited to: past and future lost wages, pain and suffering,

inconvenience, mental anguish, loss of enjoyment of life, humiliation, emotional distress,

reputational harm, diminishment of career opportunities, and other harm, both tangible

and intangible.

**COUT III**
**RETALIATION**
**TITLE VII**
**(By Plaintiff against Defendant McLane)**

121.     Plaintiff repeats and realleges each and every allegation made in the above

paragraphs of this complaint.

122.     Title VII protects employees from retaliation for attempting to exercise their

rights under the Act:

> 42 U.S.C. § 2000e-3. Other unlawful employment practices
>
> (a) Discrimination for making charges, testifying, assisting, or
> participating in enforcement proceedings. It shall be an unlawful
> employment practice for an employer to discriminate against any of
> his employees . . . because [she] has opposed any practice made an
> unlawful employment practice by this subchapter, or because [she]
> has made a charge, testified, assisted, or participated in any manner
> in an investigation, proceeding, or hearing under this subchapter.

123.     The Supreme Court in Burlington v. N. & S.F. Ry. V. White, 548 U.S. 53, 68

(2006) held that a cause of action for retaliation under Title VII lies whenever the

employer responds to protected activity in such a way that "might have dissuaded a reasonable worker from making or supporting a charge of discrimination."

124.     Informal complaints and protests can constitute protected activity under the "opposition" clause of 42 U.S.C. § 2000e-3(a). Moore v. City of Philadelphia, 461 F.3d 331, 343 (3d Cir. 2006) ("Opposition to discrimination can take the form of informal protests of discriminatory employment practices, including making complaints to management.")

125.     "[A] plaintiff need not prove the merits of the underlying discrimination complaint, but only that '[s]he was acting under a good faith, reasonable belief that a violation existed.'" Aman v. Cort Furniture Rental Corp., 85 F.3d 1074, 1085 (3d Cir. 1996); Griffiths v. CIGNA Corp., 988 F.2d 457, 468 (3d Cir. 1993); and Sumner v. United States Postal Service, 899 F.2d 203, 209 (2d Cir. 1990), overruled on other grounds by Miller v. CIGNA Corp., 47 F.3d 586 (3d Cir.1995).

126.     Here, Defendants discriminated against Plaintiff because of her protected activity under Title VII.

127.     Plaintiff acted under a reasonable, good faith belief that her right to be free from discrimination on the basis of sex was violated.

128.     Plaintiff was subjected to materially adverse actions at the time or after the protected conduct took place.

129.     There was a causal connection between the Defendants' materially adverse actions and Plaintiff's protected activity.

130.     Defendants' actions were "materially adverse" because they were serious enough to discourage a reasonable worker from engaging in protected activity.

131.     Defendants acted upon a continuing course of conduct.

132.     Plaintiff will rely on a broad array of evidence to demonstrate a causal link between her protected activity and the Defendants' actions taken against her, such as the unusually suggestive proximity in time between events, as well as Defendants' antagonism and change in demeanor toward Plaintiff after Defendants became aware of Plaintiff's protected activity.

133.     As a result of Defendants' violations of Title VII, Plaintiff has suffered damages, including, but not limited to: past and future lost wages, pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, humiliation, emotional distress, reputational harm, diminishment of career opportunities, and other harm, both tangible and intangible.

**COUNT IV**
**INTENTIONAL INFLICTION OF**
**EMOTIONAL DISTRESS ("IIED")**
**(By Plaintiff against Defendant Munroe)**

134.     Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

135.     Plaintiff brings this claim against Defendant Munroe in his individual capacity for intentional infliction of emotional distress ("IIED").

136.     To prove a claim of IIED, the following elements must be established: (1) the conduct must be extreme and outrageous; (2) it must be intentional or reckless; (3) it must cause emotional distress; and (4) that distress must be severe. Hooten v. Penna. College of Optometry, 601 F.Supp. 1155 (E.D.Pa.1984); Hoy v. Angelone, 691 A.2d 476, 482 (Pa.Super. 1997); Restatement (Second) of Torts § 46.

137.     Defendant Munroe intentionally sexually assaulted, harassed, and inflicted emotional injury on Plaintiff by subjecting her to outrageous treatment beyond all bounds of decency.

138.     Defendant Munroe verbally, mentally, and physically abused Plaintiff and treated her in a demeaning and inferior manner, which no reasonable person could be expected to endure.

139.     Furthermore, Defendant Munroe engaged in retaliation when Plaintiff opposed such behavior.

140.     As a direct and proximate result of these malicious and conscious wrongful actions, Plaintiff has sustained severe emotional distress and damages, including punitive damages, to be determined at trial.

## COUNT V
## DISCRIMINATION
## PHRA § 955
## (By Plaintiffs against Defendant McLane)

141.     Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

142.     The PHRA § 955 provides that it shall be an unlawful discriminatory practice:

"(a) For any employer because of the race, color, religious creed, ancestry, age, sex, national origin or non-job related handicap or disability or the use of a guide or support animal because of the blindness, deafness or physical handicap of any individual or independent contractor, to refuse to hire or employ or contract with, or to bar or to discharge from employment such individual or independent contractor, or to otherwise discriminate against such individual or independent contractor with respect to

18

compensation, hire, tenure, terms, conditions or privileges of employment or contract, if the individual or independent contractor is the best able and most competent to perform the services required."

143.     Defendants engaged in an unlawful discriminatory practice by discriminating against Plaintiff because of her sex.

144.     As a result of the Defendants' violations of the PHRA, Plaintiff has suffered damages including but not limited to: past and future lost wages, pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, humiliation, emotional distress, reputational harm, diminishment of career opportunities, and other harm, both tangible and intangible.

**COUNT VI**
**AIDING AND ABETTING**
**PHRA § 955(e)**
**(Plaintiff against Individual Defendants only)**

145.     Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

146.     PHRA § 955(e) provides that it shall be an unlawful discriminatory practice: "For any person, employer, employment agency, labor organization or employee, to aid, abet, incite, compel or coerce the doing of any act declared by this section to be an unlawful discriminatory practice, or to obstruct or prevent any person from complying with the provisions of this act or any order issued thereunder, or to attempt, directly or indirectly, to commit any act declared by this section to be an unlawful discriminatory practice."

147.     Defendants engaged in an unlawful discriminatory practice in violation of PHRA
§ 955(e) by aiding, abetting, inciting, compelling, and/or coercing the discriminatory
conduct.

148.     As a result of the Defendants' violations of the PHRA, Plaintiff has suffered
damages including but not limited to: past and future lost wages, pain and suffering,
inconvenience, mental anguish, loss of enjoyment of life, humiliation, emotional distress,
reputational harm, diminishment of career opportunities, and other harm, both tangible
and intangible.

**COUNT VII**
**Retaliation**
**PHRA § 955(d)**
**(Plaintiff against All Defendants)**

149.     Plaintiff repeats and realleges each and every allegation made in the above
paragraphs of this complaint.

150.     PHRA § 955(d) provides that it shall be an unlawful discriminatory practice: "For
any person, employer, employment agency or labor organization to discriminate in any
manner against any individual because such individual has opposed any practice
forbidden by this act, or because such individual has made a charge, testified or assisted,
in any manner, in any investigation, proceeding or hearing under this act."

151.     Defendants engaged in an unlawful discriminatory practice by discharging,
retaliating, and otherwise discriminating against Plaintiff because of Plaintiff's opposition
to the unlawful and discriminatory employment practices of Defendants.

152.     As a result of the Defendants violations of the PHRA, Plaintiff has suffered
damages including but not limited to: past and future lost wages, pain and suffering,

inconvenience, mental anguish, loss of enjoyment of life, humiliation, emotional distress, reputational harm, diminishment of career opportunities, and other harm, both tangible and intangible.

**COUNT VIII**
**Discrimination**
**NJLAD**
**(Plaintiff against All Defendants)**

153.    Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

154.    The NJLAD, Section 10:5-12(a), sets forth in pertinent part as follows: "It shall be an unlawful employment practice, or, as the case may be, an unlawful discrimination: a) For an employer, because of race, . . . , sex, . . . to refuse to hire or employ or to bar or to discharge or require to retire, unless justified by lawful considerations other than age, from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment."

155.    The full statute reads as follows:

**10:5-12. Unlawful employment practices, discrimination.**

It shall be an unlawful employment practice, or, as the case may be, an unlawful discrimination:

b.    For a labor organization because of the race, creed, color, national origin, ancestry, age, marital status, civil union status, domestic partnership status, affectional or sexual orientation, gender identity or expression, disability, pregnancy or breastfeeding, or sex of any individual, or because of the liability for service in the armed Forces of the United States or nationality of any individual, to exclude or to expel from its membership such individual or to discriminate in any way against any of its members, against any applicant for, or individual included in, any apprentice or other training program or against any employer or any individual employed by an employer,; provided however, that nothing contained herein shall be construed to bar a labor organization from excluding from its apprentice or other training program any person on the basis of sex in those certain circumstances where sex is a bona fide occupational qualification reasonably necessary to the normal operation of the particular apprentice or other training program.

21

156.     Defendants engaged in an unlawful discriminatory practice by discriminating against the Plaintiff as set forth herein.

157.     Plaintiff hereby makes a claim against Defendants under all of the applicable paragraphs of the NJLAD.

158.     As a result of Defendants' violations of the NJLAD, Plaintiff has suffered damages, including, but not limited to: past and future lost wages, pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, humiliation, emotional distress, reputational harm, diminishment of career opportunities, and other harm, both tangible and intangible.

**COUNT IX**
**Retaliation**
**NJLAD**
**(Plaintiff against All Defendants)**

159.     Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

160.     New Jersey's Law against Discrimination Section 10:5-12(d) sets forth that it is unlawful"

"[f]or any person to take reprisals against any person because that person has opposed any practices or acts forbidden under this act or because that person has filed a complaint, testified or assisted in any proceeding under this act or to coerce, intimidate, threaten or interfere with any person in the exercise or enjoyment of, or on account of that person having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by this act."

161.     Defendants violated this section as set forth herein.

162.    Plaintiff hereby makes a claim against Defendants under all of the applicable paragraphs of the New Jersey's Law against Discrimination.

163.    As a result of Defendants' violations of the NJLAD, Plaintiff has suffered damages, including, but not limited to: past and future lost wages, pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, humiliation, emotional distress, reputational harm, diminishment of career opportunities, and other harm, both tangible and intangible.

**COUNT X**
**Aiding and Abetting**
**NJLAD**
**(Plaintiff against Individual Defendants Only)**

164.    Plaintiff hereby incorporates all allegations contained in the above-mentioned paragraphs as fully as if they were set forth at length.

165.    New Jersey's Law against Discrimination Section 10:5-12(e) sets forth in pertinent part as follows:

"Unlawful employment practices, discrimination.   It shall be an unlawful employment practice, or, as the case may be, an unlawful discrimination:  e) For any person, whether an employer or an employee or not, to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this act, or to attempt to do so."

166.    Defendants engaged in an unlawful discriminatory practice by aiding and abetting the discrimination against Plaintiff as set forth herein.

167.    Defendants violated all other applicable sections of N.J. Stat. § 10:5-12(e) et. Seq.

168.    As such, Plaintiff has been damaged as set forth herein.

169.     Plaintiff hereby makes a claim against Defendants under all of the applicable paragraphs of the New Jersey's Law against Discrimination.

170.     As a result of Defendants' violations of the NJLAD, Plaintiff has suffered damages, including, but not limited to: past and future lost wages, pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, humiliation, emotional distress, reputational harm, diminishment of career opportunities, and other harm, both tangible and intangible.

## JURY DEMAND

Plaintiff requests a jury trial on all issues to be tried.

## DEMAND TO PRESERVE EVIDENCE

The Defendants are hereby demanded to preserve all physical and electronic information pertaining in any way to Plaintiff's employment, to her potential claims, her claims to damages, to any defenses to same, including, but not limited to electronic data storage, Plaintiff's personnel file, comparator employee personnel files, memos, job descriptions, text messages, e-mails, spreadsheets, images, cache memory, payroll records, paystubs, time records, timesheets, and any other information and/or data which may be relevant to any claim or defense in this litigation.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment against Defendants, jointly and severally, in an amount to be determined at the time of trial plus interest, including but not limited to all emotional distress, back pay, and front pay, punitive damages, liquidated damages, statutory

damages, attorneys' fees, costs, and disbursements of action; and for such other relief as the

Court deems just and proper.


Respectfully Submitted,
**DEREK SMITH LAW GROUP, PLLC**
*Attorneys for Plaintiff Jane Doe*


By: _/s/ Catherine W. Lowry, Esq._
Catherine W. Lowry, Esq.
1628 Pine Street
Philadelphia, Pennsylvania 19103
Dated:  October 25, 2024             (267) 857-0832
catherine@dereksmithlaw.com